**Mary Virginia HERD, Plaintiff,**

v.

**COUNTY OF ALLEGHENY, Court of Common Pleas of Allegheny County et al.**

**Mary Virginia HERD**

v.

**COUNTY OF ALLEGHENY.**

Civ. A. Nos. 75–259, 77–1049.

United States District Court, W. D. Pennsylvania.

Jan. 16, 1979.

James H. Logan, Louise R. Malakoff, Pittsburgh, Pa., for plaintiff.

Jonathan Vipond, III, Philadelphia, Pa., for Board of Judges.

Alan A. Garfinkel, Pittsburgh, Pa., for Henry Ellenbogen.

## OPINION

WEBER, Chief Judge.

This is an employment discrimination suit for injunctive relief and damages brought by the plaintiff, Mary Virginia Herd against defendants, the Court of Common Pleas of Allegheny County, the Honorable Henry Ellenbogen, the Honorable Michael J. O'Malley and Charles H. Starrett. The plaintiff is a court reporter employed by the Court of Common Pleas of Allegheny County. Defendant the Court of Common Pleas of Allegheny County is the court of general jurisdiction for Allegheny County. Defendant the Honorable Henry Ellenbogen was President Judge of the former Court of Common Pleas of Allegheny County prior to January 1, 1969 and after January 1, 1969 was the President Judge of the newly constituted Court of Common Pleas of Allegheny County until January, 1978. Defendant the Honorable Michael J. O'Malley is currently the President Judge of the Court of Common Pleas of Allegheny County. Defendant Charles H. Starrett is the Administrator of the Court of Common Pleas of Allegheny County.

Ms. Herd filed a charge of sex discrimination in employment with the Equal Employment Opportunities Commission and the Pennsylvania Human Relations Commission against the Court of Common Pleas of Allegheny County in 1973. She was issued a Right to Sue Letter on December 6, 1974. Within the required 90 day period, the plaintiff brought the action at No. 75–259 Civil.

The plaintiff's complaint in Civil Action No. 75–259 sets forth two counts. The first count alleges that the defendants, acting under color of state law, have arbitrarily discriminated against the plaintiff in her employment on the basis of sex. The plaintiff thereby claims a violation of her rights secured by the Fourteenth Amendment to the Constitution, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The Fourteenth Amendment guarantees every person equal protection and due process of law. Section 1983 provides relief from deprivation under state law, custom or usage of any rights, privileges or immunities secured by the Constitution and laws. Title VII prohibits an employer from discriminating against and classifying an employee on the basis of sex.

The plaintiff's allegation is that because she is a woman she was denied promotion from her present classification of Court Reporter I to Court Reporter II together with the increased salary benefits, was restricted to reporting in the Family Division, and was required to take a reporter test in order to achieve the Court Reporter II classification.

In the second count, the plaintiff avers that certain conduct of defendants Ellenbogen and Starrett constituted unlawful retaliation against the plaintiff in violation of Title VII of the Civil Rights Act of 1871, 42 U.S.C. § 2000e–3(a) the Fourteenth Amendment and Section 1983. Section 2000e–3(a)

protects against employment discrimination resulting from participation in any proceeding to enforce the Equal Employment Opportunities Act, 42 U.S.C. § 2000e et seq.

By order of this Court entered November 17, 1977, the plaintiff was permitted to proceed on her Title VII causes of action against all defendants, and on the Section 1983 cause of action against all defendants except the Court of Common Pleas of Allegheny County. Plaintiff alleges retaliation under Section 2000e–3(a) only on the part of defendants Ellenbogen and Starrett.

Subsequent to our denial of leave to file portions of a second amended complaint the plaintiff filed a separate action at No. 77–1049 Civil, which repeated the same factual allegations as were contained in the retaliation counts as a basis for another § 1983 cause of action. These were considered at trial and are dealt with herein.

The jurisdiction of this Court is undisputed. 28 U.S.C. § 1331 confers original jurisdiction on this court in civil actions where the matter in controversy exceeds the sum of $10,000, exclusive of interests and costs, and arises under the Constitution and laws of the United States. Jurisdiction is also found pursuant to 28 U.S.C. § 1343(3) and (4) which provide for original jurisdiction of this Court in all suits to recover damages or secure equitable or other relief for deprivation of civil rights secured by the Constitution and any Act of Congress. 42 U.S.C. § 2000e–5(f) provides for suits in equity authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

The historical background of this case is as follows: In 1969 the various courts of Allegheny County, The Courts of Oyer and Terminer and General Jail Delivery and Quarter Sessions of the Peace (hereinafter called the former Common Pleas Court) the County Court, Orphans Court and the Juvenile Court were consolidated pursuant to the new Judiciary Article of the Pennsylvania Constitution, Const. Sched. Art. 5, § 17 into the Court of Common Pleas of Allegheny County. The newly constituted Court of Common Pleas consists of a Trial Division, Orphans' Court Division, and a Family Court Division. The Family Court Division exercises jurisdiction in domestic relations, juvenile matters and adoptions and delayed birth certificates.

Prior to the 1969 consolidation of the Allegheny County Courts, each court was independently administered and staffed, maintaining independent job requirements, titles and salary scales. Traditionally, court reporters in the Orphans Court were hired by the judges of that Court and permanently assigned to a particular judge. Court Reporters in the former Court of Common Pleas were rotated to different judges in a pool system and, beginning in 1951, were required to take a test for initial employment. The plaintiff was hired in 1963 by the then President Judge of the County Court as a County Court reporter after demonstrating her competence to record the type of proceedings heard here. She also served a six-month probationary period with the County Court.

Because of the wide divergence in the administration of court personnel among the various pre-consolidation courts, in March 1969 the Board of Judges requested the Pennsylvania Economy League to study and make recommendations as to the "manpower needs, job descriptions and salary schedules—and the administrative setup of the Court." The PEL study was heavily relied upon as a guide in classifying and paying court reporters and stenographers in the newly formed Court of Common Pleas. Court reporters who served in the Trial Division and Orphans' Court Division of the Court of Common Pleas immediately after the consolidation were the former court reporters of the former Common Pleas Court and the Orphans' Court. They were designated Court Reporters II and paid at the highest salary rate. Court reporters assigned to adult or non-juvenile matters in Family Court Division were the former County Court reporters. They received Court Reporter I status and were paid a lower salary. Plaintiff was one of four of these. Two of the former County Court reporters who had passed the Common

Pleas court reporters' examination were classified and paid as Court Reporter II employees. Those Court reporters serving in the juvenile area of the Family Court Division were given the status of Hearing Stenographer and paid the lowest salary.

The PEL study was approved by the Board of Judges but accepted only in part by the County Salary Board. Nevertheless, the above classification of court reporters in the newly consolidated Court of Common Pleas of Allegheny County was applied and still exists in the present court system.

■ Upon consolidation, Ms. Herd was assigned to the non-juvenile area of the Family Court Division, classified Court Reporter I and paid the lower salary. The plaintiff claims she was discriminated against in being assigned to the adult Family Court Division, in being required to take a test to achieve the higher status, and in being paid a lower rate for the work performed by her as a reporter in the adult Family Court Division because she is a woman. As the Supreme Court stated in *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978):

> "The central focus of the inquiry in a case such as this is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco,* supra, at p. 577, 98 S.Ct. at p. 2949 citing *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396.

We hold that the action of the defendants in assigning the plaintiff to the adult Family Court Division upon consolidation, requiring her to take the court reporting test to achieve Court Reporter II status, and in paying her a lower salary as a Court Reporter I in the adult Family Court Division was not predicated upon any consideration of the plaintiff's sex and was not discriminatory.

■ Given the analysis contained in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the plaintiff has made out a prima facie case by showing:

(i) that she is female,

(ii) that some reporters of the former Orphans' Court got automatic classification as Court Reporter II without taking the examination while this was denied to plaintiff.

On the consolidation of the courts in 1969, there were six County Court reporters. The plaintiff and three other female County Court reporters were designated Court Reporter I and assigned to the adult Family Court Division. Two other County Court reporters, who had passed the Common Pleas qualifying examination, were given Court Reporter II status and assigned to the court reporter pool to be rotated in the Trial Division. The court reporters in the former Orphans' Court were classified Court Reporter II upon the consolidation of the courts and maintained in their former positions as reporters permanently assigned to an individual Orphans' Court judge. All court reporters in the former Orphans' Court at the time of consolidation were male. Since the consolidation, court reporters employed in the Orphans' Court Division have all been men.

■ Testimony heard and stipulations entered into at trial indicate that no complaints from various judges and attorneys were ever voiced regarding the plaintiff's performance as a reporter in the adult Family Court Division. There exists no evidence from which one may conclude that the plaintiff is not as competent as the higher grade reporters. However, the plaintiff was not promoted to the higher court reporter status. The plaintiff has not introduced any direct proof of discrimination. The *McDonnell Douglas* analysis does not require such proof to establish a prima facie case of discrimination. *McDonnell Douglas* does require, however, and the plaintiff does establish, that the denial of her promotion was not due to an absolute or relative lack of qualifications or to the absence of a Court Reporter II opening. *International Brotherhood of Teamsters v. United States et al.,* 431 U.S. 324, 358 n. 44,

97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Consequently, the evidence introduced at trial raises the inference of discrimination in that we may presume the above acts of the defendants, "if otherwise unexplained, were more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters,* supra, 438 U.S. at p. 577, 98 S.Ct. at 2949.

■ Complainant in her Title VII action has carried the initial burden of establishing a prima facie case. "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824. Defendants assert that the plaintiff's failure to obtain a higher status is due solely to her refusal to take the qualifying examination. This Court need not consider every recognizable reasonable basis for the defendants' denial of a promotion to plaintiff. We believe that the defendants' explanation is sufficient to discharge the defendants' burden of proof at this stage and to meet the plaintiff's prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 803, 93 S.Ct. 1817.

The qualifying exam consists of thee parts (1) question and answer; (2) charge; and (3) literary matter. The test was first required to secure initial employment as a court reporter in the former Court of Common Pleas in 1951 by order of the then President Judge William McNaugher. The test was continued as a requirement by defendant Ellenbogen when he became President Judge in 1963 and thereafter upon the consolidation of the courts in 1969. It was administered by the chief court reporter and was reviewed by a committee of the court reporters for their recommendation. A grade of 95% or higher on each component has been the passing grade since the test's inception. However, at various times due to the scarcity of court reporters, the test committee has sometimes recommended applicants for employment who had not obtained a passing score on all components.

The plaintiff has been given a full and fair opportunity as expressed in *McDonnell Douglas Corp. v. Green,* 411 U.S. at 805, 93 S.Ct. 1817 to present this court with evidence demonstrating that the defendants' presumptively valid reason for not granting her Court Reporter II status—her refusal to take the test—was a mere pretext for a discriminatory decision founded on sex.

■ The plaintiff has not established that she is the victim of a facially neutral employment practice—the administration of the test—which has a disparate impact on the members of her sex. The format and composition of the Common Pleas court reporter test is patterned after the test administered for certification by the National Shorthand Reporters Association.[1] Given the evidence, the test appears to reasonably measure an applicant's speed, comprehension, accuracy, spelling, use of language, punctuation, and ability to transcribe, which are all job related skills. The outcome of the test is not affected by the sex of the reporter taking the test.

■ We think the crux of Ms. Herd's complaint is disparate treatment in that she, as a former County Court reporter, was required to take the test in order to achieve the classification of Court Reporter II upon consolidation of the courts. The plaintiff has attempted to prove disparate treatment by presenting this court with evidence that there were male court reporters reporting in other divisions and receiving the higher status and pay who had not taken the test or who had failed to achieve a passing grade. The evidence establishes that, prior to the consolidation, two male court reporters in the former Orphans' Court were hired without taking the test. Four male reporters were hired in the former Court of Common Pleas and one was hired in the Orphans' Court without achieving passing grades on all components of the test. After

---

1. The evidence supports the finding that the NSRA certificate is accepted by the court reporter test committee as the equivalent of a passing grade on the Common Pleas reporter test.

the consolidation, one male reporter was hired in the Orphans' Court Division without achieving a passing grade on all components of the test.

We are not persuaded by this evidence that the imposition of the testing requirement for the plaintiff's promotion constituted improper or disparate treatment and was sexually discriminatory. Substantial testimony was elicited at trial to show that the test was a reasonable means of requiring the plaintiff to demonstrate her abilities beyond her service as a reporter in the County Court. Competence as a court reporter in the former County Court and present adult Family Court Division is not necessarily indicative of competence to serve as a court reporter in the consolidated Court of Common Pleas reporter pool. As a statutory court of limited jurisdiction, the County Court handled desertion and non-support cases, minor civil cases with a limited monetary jurisdictional amount, criminal matters involving only misdemeanors, and appeals from summary proceedings. The nature of the testimony recorded was, to a large extent, non-technical. Much of the proceedings involved colloquies between counsel and court before the bench. After consolidation, the Family Division assumed the non-support and desertion jurisdiction formerly handled by the County Court. Proceedings in the adult area of the Family Court Division are predominantly brief, require little or no testimony to be taken, and result in far fewer appeals and transcriptions than those in the Trial and Orphans' Court Divisions. The imposition of the testing requirement for promotion to Court Reporter II status is justified on the basis of the identified differences between court reporting duties in the former County Court or present Family Division and the other divisions in the present Court of Common Pleas.

Although the test consists of non-technical material and does not measure the applicant's ability to record and transcribe prolonged court proceedings, the conclusion logically derived from the evidence is that the test is reasonably related to the job requirements and proficiency of an official court reporter in the Court of Common Pleas.

Other evidence relevant to disposing of the question of pretext is that the number of females classified as Court Reporter II is approximately equal to the number of males with that classification. Nearly all reporters classified as Court Reporter II have taken the test and achieved a passing grade. The plaintiff was advised of the test requirement, encouraged to take the test to improve her classification and pay and provided ample opportunity to do so. The opportunity to take the test was open at all times to plaintiff during her service as a reporter in County Court and there were obviously many openings for employment in the Common Pleas Court, as shown by the testimony with respect to the discretion exercised by the committee in applying the passing grade requirement in times of an acute need for more reporters. The plaintiff has refused to take the test and consequently, remains classified as a Court Reporter I assigned to the adult Family Court Division.

The evidence introduced at trial regarding the history and tradition of the Orphans' Court supports a finding that the defendants did not discriminate against the plaintiff because of her sex by requiring the plaintiff to take the test to achieve Court Reporter II status while permitting four male court reporters both before and after the consolidation to report in the Orphans' Court and be classified Court Reporter II upon consolidation without having taken the test or without having achieved a passing grade on each component of the test.

The Orphans' Court enjoyed a long established reputation as a prestigious, autonomous institution. Initially called the Court of the Widow and the Orphan, the Orphans' Court was established by statute to handle the probate of wills, the administration of the estates of minors and incompetents and various other matters involving the transmission of wealth. The present Orphans' Court Division continues to perform these functions.

Given the large number and nature of the proceedings, the considerable amounts of money, and the substance of the legal issues involved, a particular dignity and refined procedure evolved within the Orphans' Court. Because of this, a tradition and rapport exists between the judge and court reporter which did not lend itself to pooling either before or after the consolidation of the courts. Court reporters in the Orphans' Court Division are still permanently assigned to a particular judge and are supervised entirely by the Orphans' Court Division judges. As was the case prior to the consolidation, the Orphans' Court Division presently is independently administered and staffed by the Orphans' Court Division judges. It is, therefore, logical that a separate system of court reporting operate within the historically and still practically autonomous Orphans' Court.

Inasmuch as the plaintiff refused to take the test required for Court Reporter II status, the defendants' classification of the plaintiff as Court Reporter I was not arbitrary, irrational or discriminatory in violation of the plaintiff's rights secured by the Fourteenth Amendment. Title VII or Section 1981.

With respect to the plaintiff's second count, we hold that the plaintiff fails to prove unlawful retaliation by defendants Ellenbogen and Starrett. The plaintiff avers that defendants Ellenbogen and Starrett, as President Judge and Chief Administrator of the Court of Common Pleas respectively, prevented her upgrading to Court Reporter II and the accompanying salary increase which had been approved by the Allegheny County Salary Board, because she had filed a charge of sex discrimination with the Equal Employment Opportunities Commission. The plaintiff's allegation, however, is not supported by a preponderance of the evidence.

No question of fact exists regarding the Salary Board's approval of plaintiff's reclassification and salary increase. It is also not disputed that Judge Ellenbogen instructed the County Payroll Office not to raise the plaintiff's salary.

The testimony at trial supports three nonretaliatory reasons for Ellenbogen's and Starrett's actions:

(1) inasmuch as the request for the raise in the plaintiff's position and salary was not initiated by defendant Ellenbogen nor was he or his representative present at the meeting during which the raise was approved, the County Salary Board action in approving the raise was illegal;

(2) the plaintiff by not taking the test did not qualify for the promotion;

(3) Defendant Ellenbogen sought to preserve the status quo during the pendency of the outstanding sex discrimination administrative complaint.

We find that defendant Ellenbogen reasonably believed that the action of the Salary Board was illegal. The Supreme Court of Pennsylvania has interpreted the applicable provisions of the Second Class County Code to require the administrative head of the office encompassing the position to participate in and request any action by the Salary Board affecting such position. The evidence reveals that the action of the Salary Board was proposed, considered and voted upon absent participation and a request by Judge Ellenbogen. It was not listed on the agenda for the meeting and was adopted by the non-judicial members of the Salary Board as evidenced by a handwritten note on the margin of the agenda.

We further find that Judge Ellenbogen's action directing the Payroll Office not to pay the raise to plaintiff was non-retaliatory in that he consistently refused to elevate the plaintiff's status from the time of the court consolidation until he retired as President Judge because she refused to take the test.

Defendant Ellenbogen's third proffered justification for his action, that he wished to preserve the status quo pending a determination by the E.E.O.C., P.H.R.C. or the court of the plaintiff's complaint, is reasonable and does not smack of retaliation.

Defendant Starrett did not engage in any act of retaliation against the plaintiff. As

the Administrator of The Court of Common Pleas of Allegheny County, Starrett primarily implemented the policies established by the President Judge and the Board of Judges. Inasmuch as the actions of Starrett did not exceed in scope those of defendant Ellenbogen and we find Ellenbogen's conduct to be reasonable and non-retaliatory in light of the facts, it follows that Starrett's actions did not constitute retaliation.