Ellen G. McCLOUD, Plaintiff,

v.

FAIRCHILD INDUSTRIES, INC., Defendant.

No. C–81–296–WS.

United States District Court, M.D. North Carolina, Winston-Salem Division.

March 30, 1984.

---

Paul A. Sinal, Winston-Salem, N.C., for plaintiff.

David A. Irvin, Winston-Salem, N.C., for defendant.

## MEMORANDUM OPINION

ERWIN, District Judge.

Plaintiff Ellen G. McCloud filed this action on July 2, 1981 alleging that the defendant Fairchild Industries, Inc., in failing to promote her, discriminated against her because of her race and sex in violation of Title VII of the Civil Rights Act of 1964 [1] and the Civil Rights Act of 1866.[2]

This case was tried by the court beginning February 6, 1984. Based upon the testimony and the documentary evidence, the court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. The plaintiff Ellen G. McCloud (hereinafter referred to as "Ms. McCloud") is a black female citizen of the United States and a resident of Forsyth County, North Carolina.

2. The defendant Fairchild Industries, Inc. (hereinafter referred to as "Fairchild") is a Maryland corporation authorized to do business in North Carolina and operates two divisions, Fairchild Burns Company (hereinafter referred to as "Burns") and Fairchild Industrial Products Company (hereinafter referred to as "IPC") in Winston-Salem, North Carolina. The Burns Division manufactures commercial airline seating, and the IPC Division manufactures pneumatic control devices and industrial transmissions. The defendant is engaged in an industry affecting commerce and is

1. 42 U.S.C. § 2000e, *et seq.*

2. 42 U.S.C. § 1981.

an employer as defined by 42 U.S.C. § 2000e(b).

3. The terms and conditions of employment of the production and maintenance employees of the defendant's two divisions were governed at all relevant times hereto by one collective bargaining agreement entered into between the defendant and Local Union 391, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America. The union contract provides for promotion by seniority, provided the employee is qualified to perform the job. The contract also recognizes only one occupational group for all mechanical inspectors in both divisions even though the duties and responsibilities of the inspectors in the two divisions differ substantially.

4. Since 1965, Ms. McCloud has been employed in the defendant's IPC Division and is still currently employed in that division as a tool inspector, Labor Grade 11, the next to highest job classification within the mechanical inspection occupational group and in the union contract.

5. Ms. McCloud filed the charge of discrimination leading to this lawsuit on January 30, 1979, alleging that the defendant discriminated against her because of her race and sex and in retaliation for filing an earlier charge with the Equal Opportunity Employment Commission (hereinafter referred to as "EEOC") by paying her disparate wages and denying her a promotion. After conducting its investigation, the EEOC issued a "no reasonable cause" determination and notice of right to sue on March 31, 1981.

6. Ms. McCloud was first employed in the IPC Division as a trainee in the bench assembly occupational group. She remained in this occupational group, holding various classifications including a bench machine operator, for the next seven years, and then, in September 1972, transferred into the IPC Division inspection department. Since transferring into the inspection department, Ms. McCloud has received three promotions.

7. In July 1978, Ms. McCloud was classified as an Inspector A, Labor Grade 10, in the IPC Division. At that time, a tool and die inspector, Labor Grade 12, in the Burns Division left the company. Ms. McCloud, after expressing an interest in the position, was given two opportunities to demonstrate that she possessed the requisite skills, knowledge, and experience to successfully perform the inspection work in the Burns Division. After each time, however, she failed to demonstrate that she could satisfactorily perform. Subsequently, she was offered training during working hours with the director of quality assurance at the Burns Division in order to develop the skills needed for the job. However, Ms. McCloud lost interest in the training and stopped attending the training sessions made available to her. Eventually, Bill DeWitt, a white, male employee of the Burns Division, who had less seniority than Ms. McCloud, was promoted to the Tool and Die Inspector, Labor Grade 12 position.

8. The plaintiff filed both a union grievance and an EEOC charge concerning her failure to be promoted to the Tool and Die Inspector, Labor Grade 12, in the Burns Division. However, after plaintiff's last attempt on May 22, 1979 to demonstrate her ability to perform the inspection work at the Burns Division, witnessed by both her union representative Mr. Monroe Martin, and an impartial observer, Mr. James Hunter, who was the quality control manager of Champion Industries at the time, the union refused to process her grievance further to arbitration.

9. After conducting its investigation of the plaintiff's charge of discrimination, the EEOC issued a "no reasonable cause" determination on March 31, 1981.

*Discussion*

The Fourth Circuit has stated that a plaintiff makes out a prima facie case of failure to promote upon showing (1) that she belonged to a racial minority, (2) that she applied and was qualified for the promotion she sought, (3) that she was denied the promotion, and (4) that the position thereafter remained open and was in fact filled by the employer from other appli-

cants possessing her generalized qualifications. *Page v. Bolger,* 645 F.2d 227 (4th Cir.1981), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981); *Jones v. First Federal Savings & Loan,* 546 F.Supp. 762 (M.D.N.C.1982).

■ Ms. McCloud in this case has failed to prove that she was qualified for the Tool and Die Inspector, Labor Grade 12 position. Her own testimony was that she was unfamiliar with two very crucial areas of work in the Burns Division: bend deduction and bend allowance calculations. When she was offered the opportunity to demonstrate her skills and knowledge by inspecting and comparing parts to the drawings of parts on two different occasions, she was not able to do so. The incontrovertible evidence is that the parts and drawings were fair representations of the inspection work that would be required of a tool and die inspector, and courts have readily accepted skill or craft tests as accurate predictors of successful job performance. *Herd v. County of Allegheny,* 463 F.Supp. 1152 (W.D.Pa.1979), *aff'd,* 614 F.2d 770 (3d Cir.1980); *Lewis v. Bethlehem Steel Corp.,* 440 F.Supp. 949 (D.C.Md.1977).

Ms. McCloud maintains that defendant's attempt to require her to submit to a test in October 1978 was a pretext for discrimination against her, in that defendant had not applied this criterion alike to all employees within the mechanical inspection occupation group who applied for a promotion within that group. However, the uncontradicted testimony established the common usage of practical exercises to demonstrate inspection qualifications in the quality control field. Further, Mr. Dale Francois testified that he consistently used exercises to evaluate applicants for inspector jobs in the Burns Division during the four years he was the Burns director of quality assurance. The use of the practical exercise takes on even more significance when the company is defending against a union grievance over the qualifications of an employee for a promotion. Without a practical exercise to demonstrate objectively an employee's qualifications or lack thereof, an employer would be defenseless in an arbitration case.

Contrary to Ms. McCloud's testimony at trial of her professed qualifications for this job, her union representative, Monroe Martin, testified that after the second practical exercise in May 1979, she admitted to him that she was not qualified for the tool and die inspector job. This exercise was administered in compliance with the recommendation of the EEOC. It was for Ms. McCloud's protection and in her interest that Mr. Martin witnessed the practical exercise. She did not raise an objection to his presence or the presence of the impartial observer, Mr. Hunter, at the time of the exercise. Because of Ms. McCloud's admission to her union representative and because of her failure to demonstrate her qualifications for the job, her union withdrew the grievance and did not take her case to arbitration.

In Title VII and § 1981 cases, the production of evidence must follow the pattern established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981):

> In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802 [93 S.Ct. at 1824]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* at 804 [93 S.Ct. at 1825]. [Footnote omitted.]

*Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093.

Even if the court should find that Ms. McCloud made out a prima facie case of discrimination, her failure to demonstrate her qualifications for the tool and die inspector job was a legitimate nondiscriminatory reason for the defendant's action in not promoting her to the Labor Grade 12 job in its Burns Division. In contending that the defendant's articulated reason was a pretext, plaintiff places great emphasis on the fact that she was the first inspector to be required to demonstrate her skills by a practical exercise for the Labor Grade 12 Tool and Die Inspector's job and that she would have acquired the necessary qualifications for the job if she had been "temporarily assigned" to do Labor Grade 12 Tool and Die Inspector's work at the Burns Division instead of Mr. Bill DeWitt.

Mr. Francois' testimony established that the practical exercise offered the plaintiff was not designed or implemented for the first time for Ms. McCloud's promotion attempt. While Mr. Russell Lockhart may have testified that Ms. McCloud's practical exercise in May 1979 was new or unusual, he had only been the director of the Quality Assurance Department in the Burns Division for less than five months, and Mr. Francois, who was the previous director, testified that he consistently used practical exercises during his three or four years as the director of the department. More importantly, the defendant operates two separate and distinct divisions in Winston-Salem. Mr. Francois further testified that the IPC Division manufactures pneumatic controls, regulators, and gear devices for industry. Inspection at IPC is routine, using "hard" measuring points. The requirement for a tool and die inspector in IPC is nonexistent since there is no tool and die occupational group or classification in the Industrial Products Company. The tool and die occupational group is applicable only to the Burns Division. The Burns Division, on the other hand, manufactures commercial aircraft seats. Inspection is for tools, dies, and parts. The job is more complex and abstract, requiring the ability to derive measuring points "in space" from a datum line. Ms. McCloud's entire employment with Fairchild has been in the IPC Division. In 1978, she was attempting to obtain a promotion in the Burns Division. Plaintiff's witness, Mr. Lockhart, who was fired by the company, admitted that the skills and knowledge acquired on the job in the IPC Division were not the same skills, knowledge, and ability necessary to successfully perform inspection work in the Burns Division. Because the inspection departments in the two divisions were managed separately, and because of this difference in inspection work in the two divisions, an inspector in one division trying to transfer or promote to the other division would be received as an applicant from outside the company and expected to demonstrate, through an exercise, the necessary qualifications to perform the job. Mr. Lockhart further testified that he disqualified at least seven other employees, including white males, who tried to transfer from the IPC Division to the Burns Division, using similar practical exercises as Ms. McCloud's. Mr. Lockhart admitted that the decision on the plaintiff's lack of qualifications was solely his and that neither plaintiff's race nor sex played a part in his decision. Ms. McCloud's inspection knowledge and skills acquired in the IPC Division simply did not transfer and meet the different skills and knowledge necessary for the inspection work in the Burns Division, especially at the Labor Grade 12, Tool and Die Inspector level.

The case of *Herd v. County of Allegheny*, 463 F.Supp. 1152 (W.D.Pa.1979), aff'd, 614 F.2d 770 (3d Cir.1980), is closely parallel to the case at bar. In that case, a court reporter brought an employment discrimination suit alleging, among other things, that her employer had discriminated against her by failing to promote her on the basis of her sex. One of Ms. Herd's contentions was that she was required to take a test when none of the male court reporters were required to do so. She refused to take the test. The court found that:

> Substantial testimony was elicited at trial to show that the test was a reasonable means of requiring the plaintiff to demonstrate her abilities beyond her service

as a reporter in the County Court. Competence as a court reporter in the former County Court and present adult Family Court Division is not necessarily indicative of competence to serve as a court reporter in the consolidated Court of Common Pleas reporter pool.... The imposition of the testing requirement for promotion to Court Reporter II status is justified on the basis of the identified differences between court reporting duties in the former County Court or present Family Division and the other divisions in the present Court of Common Pleas.

463 F.Supp. at 1158.

Therefore, as in *Herd,* the testing of Ms. McCloud was proper, and the failure to promote her was not discriminatory.

■ Ms. McCloud also contends that she could have acquired the skills and ability necessary to qualify herself for the Labor Grade 12 Tool and Die Inspection job in the Burns Division if she had been given a temporary work assignment in the Burns Division. However, the terms and conditions of employment at the two divisions were governed by collective bargaining agreements between the union and the company. Mr. Earl Keiger, the teamsters business agent, testified that the union contract would have allowed the plaintiff to use her seniority to laterally transfer from the IPC Division to the Burns Division. He further testified, however, that the contract prohibited an employee in one division from performing temporary work assignments in the other division. Mr. DeWitt, a Burns employee, was able to perform temporary work assignments in a higher graded job in the Burns Division by this contract. There was no evidence that this limitation on temporary work assignments between divisions was discriminatory or had a disparate impact on minorities or females. To the contrary, Mr. Lockhart testified about its impact on other IPC employees, including white males, whom he disqualified when they attempted promotions from IPC to Burns. This court does not question the appropriateness or fairness of the temporary assignment restriction in the union contract. It must decide

only whether it was discriminatory. Evenhanded unfairness or poor business decisions, standing alone, are not actionable under Title VII. *See Epps v. Continental Can,* 24 FEP Cases 26, 30 (M.D.N.C.1980).

■ Ms. McCloud first sought the Labor Grade 12 position in August 1978. She was the first inspector to be required to take a practical exercise for a Labor Grade 12 position. However, Fairchild has only two Labor Grade 12 inspectors in its *entire* work force. The Labor Grade 12 inspector who left the Burns Division in 1978, thus creating the vacancy which Ms. McCloud sought, was already at that level when Mr. Francois joined the company in 1974. Therefore, there had not been a need to give a practical skills test to anyone else because no vacancies previously existed.

■ Ms. McCloud further contends that the defendant's promotion decision was made on the basis of subjective, inarticulate criteria. However, the use of subjective criteria for promotional decisions is not illegal, *per se.* "[A]s the Supreme Court pointed out in *McDonnell Douglas* itself the mere fact that subjective criteria are involved in the reason articulated by an employer does not prevent according it sufficient rebuttal weight to dispel the inference of discrimination raised by the prima facie case." *Page v. Bolger,* 645 F.2d at 230.

Plaintiff simply lacked the necessary qualifications for the tool and die inspector job in the Burns Division when she was being considered for that job by the defendant. Plaintiff's argument that the job was never really posted or was not vacant is irrelevant since the evidence plainly shows that she was considered for the promotion. There was no evidence presented to support the allegations that the defendant retaliated against Ms. McCloud because of her filing of a previous EEOC charge.

### Conclusions of Law

1. The court has jurisdiction over the parties and over the subject matter.

2. The plaintiff has satisfied all the jurisdictional prerequisites of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as well as those of 42 U.S.C. § 1981.

3. The plaintiff was not refused promotions by the defendant because of her race or sex. The defendant did not retaliate against the plaintiff because of her filing of a previous EEOC charge.

For the reasons set forth in this Memorandum Opinion, the court will enter an Order simultaneously dismissing the action of the plaintiff.